**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Medi-Temp LLC,<br><br>        Plaintiff/counter-defendant,<br><br>vs.<br><br>CVS Pharmacy, Inc.,<br><br>        Defendant/counter-claimant.<br>_____<br>Medi-Temp L.L.C.<br><br>        Plaintiff/counter-defendant,<br><br>vs.<br><br>Thera-Med., Inc.<br><br>        Defendant/counter-claimant.<br>_____ | CV 05-3241-PCT-JAT (Lead)<br>CV 05-3242-PCT-JAT (Cons)<br><br>**ORDER** |

Pending before the Court are the following motions filed by Medi-Temp, LLC, in response to Thera-Med, Inc.'s and CVS Pharmacy, Inc.'s counterclaims: Motion to Dismiss Tortious Business Interference Counterclaims: Count X (Thera-Med), Count IX (CVS) (Doc. # 31); Motion to Dismiss Abuse of Process Counterclaim: Count XVIII (Thera-Med), Count XIV (CVS) (Doc. #32); Motion to Dismiss United States Anti-Trust Counterclaims: Count XVI (Thera-Med), Count XII (CVS) (Doc. # 33); Motion for More Definite Statement of Unfair Competition Counterclaims: Count XVII (Thera-Med), Count XIII (CVS) (Doc. #

34); Motion to Dismiss, or in the Alternative, to Strike Defendant's Counterclaim for Declaration of Exceptional Case: Count IV (Thera-Med and CVS) (Doc. # 35); Motion to Dismiss Counterclaims for Declaratory Judgment of Patent Invalidity and Unenforceability: Counts II & III (Thera-Med and CVS) & Motion to Strike Fifth Affirmative Defense of Patent Invalidity and Unenforceability (Doc. # 36); Motion to Dismiss Misappropriation Counterclaim: Count IX (Thera-Med) (Doc. # 37); Motion to Dismiss Fraud Counterclaim: Count XI (Thera-Med), Count X (CVS) (Doc. # 38); Motion to Dismiss Negligent Misrepresentation Counterclaims: Count XII (Thera-Med), Count XI (CVS) (Doc. #39); Motion for More Definite Statement of Injurious Falsehood and Defamation Counterclaims: Counts XIII-XIV (Thera-Med) (Doc. # 40); and Motion to Dismiss Breach of Fiduciary Duty Counterclaim: Count XV (Thera-Med) (Doc. # 41).

 Also pending is Medi-Temp's Motion to Dismiss Rite-Aid Counterclaims: Count IV (Declaration of Exceptional Case); Count IX (Tortious Business Interference); Count X (Fraud); Count XI (Negligent Misrepresentation) and Count XIV (Abuse of Process) and Motion for More Definite Statement of Rite Aid Counterclaim XIII (Unfair Competition) (Doc. #65).

**I. Background**

 The founder and President of Medi-Temp, LLC ("Medi-Temp"), Randy Allen Evans, developed hot/cold therapy products, which were introduced and sold by Medi-Temp in 1996.[1] On July 4, 2000, Mr. Evans received United States Patent No. 6,083,254 covering said products and subsequently assigned the patent to Medi-Temp. In its amended complaint, Medi-Temp alleges that Defendants CVS Pharmacy, Inc. ("CVS"), Rite-Aid Corporation ("Rite-Aid"), and Thera-Med, Inc. ("Thera-Med") knowingly and intentionally copied Medi-Temp's patented hot/cold therapy products and incorporated Medi-Temp's unique blue trade

---

[1] Prior to starting Medi-Temp, Mr. Evans was President and an employee of Medical Specialties of California Manufacturing, Inc. ("MSCM"), the predecessor company to Thera-Med.

- 2 -

1 dress. Medi-Temp alleges that such actions constitute patent infringement under the patent 2 laws of the United States, 35 U.S.C. § 1, *et seq.*, trade dress infringement under the Lanham 3 Act, 15 U.S.C. § 1051, *et seq.*, and unfair competition under Arizona common law. In 4 response, Thera-Med, CVS, and Rite-Aid separately answered, asserting various defenses 5 and counterclaims against Medi-Temp. The asserted defenses and counterclaims are the 6 subject of Medi-Temp's twelve (12) motions pending before the Court.

7 **II.     Motion to Dismiss Tortious Business Interference Counterclaims**

8 Medi-Temp's first motion seeks dismissal of Thera-Med's and CVS's tortious business 9 interference counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A 10 court may not dismiss a claim under Rule 12(b)(6) "unless it appears beyond doubt that the 11 plaintiff can prove no set of facts in support of his claims which would entitle him to relief." 12 *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citing *Buckley v. Los Angeles*, 957 F.2d 13 652, 654 (9th Cir. 1992)). A motion to dismiss for failure to state a claim is disfavored and 14 rarely granted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). "All that 15 is required are sufficient allegations to put defendants fairly on notice of the claims against 16 them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Further, the Court must 17 construe the facts alleged in the counterclaims in the light most favorable to Thera-Med and 18 CVS and the Court must accept all well-pleaded factual allegations as true. See *Shwarz v.* 19 *United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, Thera-Med and CVS must 20 still meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Under 21 Rule 8, the counterclaims must contain, "a short and plain statement of the claim showing 22 that the pleader is entitled to relief." Finally, the Court must assume that all general 23 allegations "embrace whatever specific facts might be necessary to support them." *Peloza* 24 *v. Capistrano Unified School District*, 37 F.3d 517, 521 (9th Cir. 1994).

25 To establish a claim for tortious business interference, Thera-Med and CVS must 26 show "the existence of a valid contractual relationship or business expectancy; the interferor's 27 knowledge of the relationship or expectancy; intentional interference inducing or causing a

28

- 3 -

1  breach or termination of the relationship or expectancy; and resultant damage to the party
2  whose relationship or expectancy has been disrupted." *Miller v. Hehlen*, 209 Ariz. 462, 471,
3  104 P.3d 193, 202 (App. 2005) (citation omitted).  Further, the interference must be improper
4  before liability will be found.  *Id*.  In seeking dismissal of Thera-Med's and CVS's tortious
5  business interference counterclaims, Medi-Temp argues that there are no facts alleged that
6  support the third element of the claim, specifically that Medi-Temp caused an actual breach
7  or termination of the contractual relationship or business expectancy between Thera-Med and
8  CVS.  The Court agrees.

9  A review of Thera-Med's and CVS's allegations clearly indicates there has been no
10 actual breach or termination of the contractual relationship or business expectancy between
11 Thera-Med and CVS.  In fact, Thera-Med and CVS allege that a valid contractual
12 relationship and business expectancy continues to exist between them and that Medi-Temp
13 only interfered with the relationship or expectancy "in order to induce" one of the parties to
14 breach the existing relationship or terminate the expectancy.  Highlighting the continuing
15 relationship and expectancy is Thera-Med's and CVS's response to the motion to dismiss[2] in
16 which they state that Medi-Temp's interference is "jeopardizing the possibility of renewing
17 any present contracts" and "reducing any possibility of consummation of present business
18 expectancies."  This clearly indicates that there has been no actual breach or termination of
19 the contractual relationship or business expectancy between Thera-Med and CVS, but only
20 the potential of a breach or termination.  This is insufficient to state a claim for tortious
21 business interference.  Thus, even construing the facts alleged in the light most favorable to

---

[2]CVS has adopted all of Thera-Med's responses to Medi-Temp's motions.  The Court notes its frustration with the manner in which Thera-Med and CVS have responded to Medi-Temp's motions.  Instead of filing one response to each motion or a single consolidated response to all motions, Thera-Med and CVS reorganized the substance of the eleven (11) motions, combining them into a set of four (4) substantive responses.  While Thera-Med and CVS may have had reason to respond in such a manner, they are strongly discouraged from repeating such a practice in the future before this Court.

- 4 -

1 Thera-Med and CVS and accepting all well-pleaded factual allegations as true, the
2 allegations are insufficient as a matter of law to state a claim.  *See SmileCare Dental Group*
3 *v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (Court may dismiss
4 claim as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts
5 under a cognizable legal claim."). Accordingly, Medi-Temp's Motion to Dismiss Tortious
6 Business Interference Counterclaims: Count X (Thera-Med), Count IX (CVS) (Doc. # 31)
7 will be granted.

**III.    Motion to Dismiss Abuse of Process Counterclaim**

Medi-Temp's second motion seeks dismissal of Thera-Med's and CVS's abuse of process counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To establish a claim for abuse of process, Thera-Med and CVS must prove "a willful act in the use of judicial process . . . for an ulterior purpose not proper in the regular context of the proceedings." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876, 881 (App. 1982).  In other words, Thera-Med and CVS must show that Medi-Temp is using the legal process against them "primarily to accomplish a purpose for which it is not designed." *Morn v. City of Phoenix*, 152 Ariz. 164, 166, 730 P.2d 873, 875 (App. 1986) (quoting Restatement (Second) of Torts § 682 (1977)).  As the *Morn* court further explains:

> [S]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the course of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in a course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort.

*Id.*, 152 Ariz at 168, 730 P.2d 877 (quoting W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 121, at 897-99 (5th Ed. 1984). In seeking dismissal of the abuse of process counterclaims, Medi-Temp argues, in part, that its alleged ulterior motive (to disrupt Thera-

- 5 -

1  Med's and CVS's commercial relationships with their respective retailers and vendors) is
2  "squarely related to the claims set forth in Medi-Temp's Complaint - namely, Medi-Temp's
3  request for a Court order preventing the Defendants' continued infringement of Medi-Temp's
4  patent." The Court agrees.

5  In their counterclaims, Thera-Med and CVS allege that Medi-Temp has willfully used
6  the judicial process and filed this lawsuit in order to disrupt commercial relationships
7  between Thera-Med and its retailers and CVS and its vendors. Thera-Med and CVS also
8  claim, in their response, that Medi-Temp "has been communicating publicly on the lawsuit
9  and publicizing its claims that its patent and trade dress rights have been infringed" and that
10 even "[t]he attorneys for the Plaintiff have . . . facilitated the Plaintiff's ability to make false
11 claims of patent and trade dress ownership through the press release from the law offices of
12 Snell & Wilmer." These allegations indicate that Medi-Temp's actions are aimed at a
13 legitimate objective in the course of the litigation process, which objective is to prevent
14 Thera-Med and CVS from continuing to infringe Medi-Temp's patent. Thera-Med and CVS
15 have failed to set forth any allegations tending to show that Medi-Temp engaged in any
16 coercive or extortionist behavior to obtain "a collateral advantage, not properly involved in
17 the proceeding itself, . . . by the use of the process as a threat or a club." *Morn*, 152 Ariz. at
18 168, 730 P.2d at 877. Thus, even construing the facts alleged in the light most favorable to
19 Thera-Med and CVS and accepting all well-pleaded factual allegations as true, the
20 allegations are insufficient as a matter of law to state a claim for abuse of process. *See*
21 *SmileCare Dental Group*, 88 F.3d 780 at 783. Accordingly, Medi-Temp's Motion to Dismiss
22 Abuse of Process Counterclaim: Count XVIII (Thera-Med), Count XIV (CVS) (Doc. #32)
23 will be granted.

24 **IV.    Motion to Dismiss United States Anti-Trust Counterclaims**

25 Medi-Temp's third motion seeks dismissal of Thera-Med's and CVS's anti-trust
26 counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To establish a
27 violation of anti-trust law, Medi-Temp alleges that Thera-Med and CVS must establish that

28

- 6 -

1 its patent was procured by "knowing and willful fraud" and that all of the elements necessary
2 to establish a violation of Section 2 of the Sherman Act are present. *See Walker Process*
3 *Equip., Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965). As further
4 explained in *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1367 (Fed. Cir. 1998), the
5 *Walker* Court "established that antitrust liability under section 2 of the Sherman Act may
6 arise when a patent has been procured by knowing and willful fraud, the patentee has market
7 power in the relevant market, and has used its fraudulently obtained patent to restrain
8 competition." In addition, under *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 993 (9th
9 Cir. 1979), "infringement actions initiated in bad faith . . . may constitute an attempt to
10 monopolize violative of Section 2 of the antitrust law" if the other requisites of Section 2 are
11 established.

12       In seeking dismissal of the anti-trust counterclaims, Medi-Temp argues Thera-Med
13 and CVS have failed to set forth sufficient allegations of fraud in the procurement of the
14 patent. Medi-Temp also argues Thera-Med and CVS have failed to set forth sufficient
15 allegations concerning an actionable violation of Section 2 of the Sherman Act because it is
16 not presumed that the patent-based right to exclude necessarily establishes market power in
17 anti-trust terms.

18       In their counterclaims, Thera-Med and CVS allege the patent application at issue
19 omitted or misrepresented material information concerning the hot/cold therapy products,
20 specifically the incorporation of proprietary information the inventor obtained while an
21 employee of the predecessor company to Thera-Med. Further, Thera-Med and CVS allege,
22 contrary to Med-Temp's narrow interpretation of their argument, that Medi-Temp violated
23 Section 2 of the Sherman Act in its attempts to extend its patent rights beyond the reasonable
24 scope of those rights by, *inter alia*, attempting to enforce exclusive ownership of the color
25 "blue and black" in the relevant market. Finally, Thera-Med and CVS allege Medi-Temp has
26 illegally attempted to enforce its patent rights with full knowledge that the rights were
27 procured improperly from the Patent and Trademark Office. Considering all that is required
28

1  are sufficient allegations to put Medi-Temp fairly on notice of the claims against it, the Court
2  finds that the allegations state a claim for a violation of anti-trust law. Accordingly, Medi-
3  Temp's Motion to Dismiss United States Anti-Trust Counterclaims: Count XVI (Thera-Med),
4  Count XII (CVS) (Doc. # 33) will be denied.

**V.     Motion for More Definite Statement of Unfair Competition Counterclaims**

Medi-Temp's fourth motion seeks a more definite statement of Thera-Med's and CVS's unfair competition counterclaims. Under Rule 12(e) of the Federal Rules of Civil Procedure, a party may move for a more definite statement if a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." A motion under Rule 12(e) is designed to attack unintelligibility rather than a lack of detail. *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 649 (D.Ariz. 1994) (citing *Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D.Nev. 1984)). Such motions are not favored because "the pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." *Id*. (quoting *A.G. Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D.Ariz. 1989)).

An issue has been raised as to the application of California law versus Arizona law to the unfair competition counterclaims. While the Court will not address that issue at this time, it is clear that a variety of acts can constitute unfair competition under either Arizona law or California law. See *Brooks Fiber Communications of Tucson, Inc. v. GST*, 992 F.Supp. 1124, 1131 (D.Ariz. 1997) (acknowledging the broad definition of "unfair competition" under the Restatement (Third) of Unfair Competition § 1 (1995)); *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 467 (9th Cir. 1990). For example, under Arizona law, unfair competition includes acts of deceptive marketing, trademark infringement, trade dress infringement, the misappropriation of intangible trade value including trade secrets, and acts or practices actionable under federal or state statutes. See Restatement (Third) of Unfair Competition § 1 (1995); see also *Brooks Fiber*, 992 F.Supp. at 1131 (citing Restatement and stating "[w]here there is no pertinent Arizona law, Arizona

courts will follow the Restatement of the Law whenever applicable"). Further, under California law, unfair competition includes breach of a confidential relationship and misappropriation. *Self Directed Placement Corp.*, 908 F.2d at 467.

In seeking a more definite statement of the unfair competition counterclaims, Medi-Temp argues that the counterclaims do not specify any actions or statements which amount to unfair competition, or when those actions or statements may have occurred. In their counterclaims, Thera-Med and CVS allege a multitude of actions that they contend, by reference, constitute evidence of unfair competition. Specifically, there are numerous allegations pertaining to a violation of anti-trust laws, misappropriation, and breach of fiduciary duty, all of which can constitute unfair competition. Therefore, the Court finds that the unfair competition counterclaim is sufficiently pleaded. While the counterclaim may lack the exacting detail that Medi-Temp may be seeking, such detail is not the proper purpose of a Rule 12(e) motion. See *Resolution Trust Corp.*, 854 F.Supp. at 649. Accordingly, Medi-Temp's Motion for More Definite Statement of Unfair Competition Counterclaims: Count XVII (Thera-Med), Count XIII (CVS) (Doc. # 34) will be denied.

**VI. Motion to Dismiss or, in the Alternative, to Strike Defendants' Counterclaim for Declaration of Exceptional Case**

Medi-Temp's fifth motion seeks dismissal of Thera-Med's and CVS's counterclaim for declaration of exceptional case under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Medi-Temp requests that the Court strike the counterclaim. Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Thera-Med and CVS allege that the "case is exceptional under 35 U.S.C. § 285, and [they are] entitled to an award of [their] attorneys' fees, costs, and expenses related to the adjudication of this case."

In its motion, Medi-Temp argues 35 U.S.C. § 285 does not create a separate cause of action, instead only providing a remedy for attorney fees in "exceptional cases." In response, Thera-Med and CVS argue they are entitled to a declaratory judgment that this is an

- 9 -

exceptional case and thus entitled to attorney fees.  The Court agrees with Medi-Temp's argument and finds that 35 U.S.C. § 285 does not create a separate cause of action. However, the Court will nonetheless deny the motion to dismiss or, in the alternative, to strike and will instead construe the declaration of exceptional case counterclaim as a request for attorney fees under 35 U.S.C. § 285.  Accordingly, Medi-Temp's Motion to Dismiss, or in the Alternative, to Strike Defendant's Counterclaim for Declaration of Exceptional Case: Count IV (Thera-Med and CVS) (Doc. # 35) will be denied.

### VII. Motion to Dismiss Counterclaims for Declaratory Judgment of Patent Invalidity and Unenforceability and Motion to Strike Fifth Affirmative Defense of Patent Invalidity and Unenforceability

Medi-Temp's sixth motion seeks dismissal of Thera-Med's and CVS's counterclaims for declaratory judgment of patent invalidity and unenforceability under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Alternatively, Medi-Temp moves for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  Further, Medi-Temp's seeks to strike Thera-Med's and CVS's fifth affirmative defense of patent invalidity and unenforceability.

In support of its motion to dismiss, Medi-Temp argues that the counterclaims fail to provide fair notice as to the nature of the claims and the grounds upon which they rest.  In response, Thera-Med and CVS claim that their allegations pertaining to "numerous other invalidating prior art products and references, none of which were identified by [the] inventor to the United States Patent & Trademark Office" support an invalidity claim under 35 U.S.C. §§ 102 and 103. Further, Thera-Med and CVS claim that their allegations pertaining to the inventor's incorporation into the patent of proprietary information obtained while an employee of the predecessor company to Thera-Med support an "invalidity claim under 35 U.S.C. § 102(f)" and "unenforceability for failure to comply with the duty of candor and good faith dealing with the U.S. Patent Office."  While Thera-Med and CVS do not set forth in their counterclaims the exact provisions of Title 35 of the United States Code alleged to be violated, the Court notes that Rule 8 of the Federal Rules of Civil Procedure only requires

"a short and plain statement of the claim showing that the pleader is entitled to relief." Under this standard, Thera-Med and CVS have sufficiently stated their claims. Further, the Court will construe Thera-Med's and CVS's responses indicating the specific Title 35 provisions allegedly violated as a more definite statement of the nature of the counterclaims and the grounds upon which they rest.

Medi-Temp also argues that Thera-Med's and CVS's fifth affirmative defense should be stricken because the pleadings fail to notify Medi-Temp of the nature of the defense. Rule 12(f) of the Federal Rule of Civil Procedure provides: "... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." With respect to striking an "insufficient defense," the court should do so when: 1) it appears to a certainty that the plaintiff will succeed regardless of what facts the defendant could prove in support of the defense; 2) the affirmative defense involves no disputed and substantial questions of law that could be resolved in such a way that they would support the defense; and 3) plaintiff would be prejudiced by the inclusion of the defense. *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 80 (N.D.N.Y. 2000). As a policy matter, when a defense is insufficient as a matter of law, it should be stricken to eliminate the delay and unnecessary expense of litigating an invalid claim. *Estee Lauder, Inc v. Fragrance Counter*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (finding that delay and expense of litigation could be prejudice). However, granting a motion to strike is a "drastic remedy;" therefore, it is rarely done. *International Longshoreman's Assoc. v. Virginia Int'l Terminals, Inc.*, 904 F.Supp. 500, 504 (E.D. Va. 1995).

Thera-Med's fifth affirmative defense states that the patent "is invalid and unenforceable in its entirety and/or in relevant part for failure to meet the requirements of patentability set forth in Title 35 of the United States Code, including 35 U.S.C. §§ 102 and 103." CVS's fifth affirmative defense states that the patent "is invalid and unenforceable in its entirety and/or in relevant part for failure to meet the requirements of patentability set forth in Title 35 of the United States Code, including 35 U.S.C. §§ 102, 112, and 103." In

1  response to the motion to strike, Thera-Med and CVS further provide that the specific bases
2  for the defense include 35 U.S.C. § 102(a), 35 U.S.C. § 102(b), and 35 U.S.C. § 103(a). The
3  Court finds that the pleadings sufficiently notify Medi-Temp of the nature of the fifth
4  affirmative defense and that there has been no showing that the fifth affirmative defense will
5  not succeed regardless of the facts.

6  Accordingly, Medi-Temp's Motion to Dismiss Counterclaims for Declaratory
7  Judgment of Patent Invalidity and Unenforceability: Counts II & III (Thera-Med and CVS)
8  & Motion to Strike Fifth Affirmative Defense of Patent Invalidity and Unenforceability (Doc.
9  # 36) will be denied.

10 **VIII. Motion to Dismiss Misappropriation Counterclaim**

11 Medi-Temp's seventh motion to dismiss seeks dismissal of Thera-Med's
12 misappropriation counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil
13 Procedure. Medi-Temp argues that Arizona law provides a two-year statute of limitations
14 for the misappropriation counterclaim and, as such, the counterclaim is time-barred. In
15 response, Thera-Med argues that California law (providing a three-year statute of limitations)
16 applies and that the accrual date of the counterclaim is a question of fact mandating denial
17 of the motion to dismiss.

18 Regardless of the applicable law, a cause of action accrues when the party knows or
19 should have known through the exercise of reasonable diligence the facts underlying the
20 cause. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 588,
21 898 P.2d 964, 966 (1995); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 813, 29 P.3d 175,
22 184 (Cal. 2001). As pointed out by Thera-Med, if the accrual date depends on "who knew
23 what, when it became known, and what triggered such knowledge," then the motion to
24 dismiss should be denied because "rendering a decision as to the accrual date . . . would
25 require a factual determination." *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur*
26 *Andersen L.L.P.*, 175 F.Supp.2d 1180, 1198 (D.Ariz. 2001). While Medi-Temp argues that
27 the pleadings clearly indicate the misappropriation counterclaim is time-barred, the Court
28

- 12 -

finds that such a determination will require a factual determination. Accordingly, Medi-Temp's Motion to Dismiss Misappropriation Counterclaim: Count IX (Thera-Med) (Doc. # 37) will be denied.

### IX. Motion to Dismiss Fraud Counterclaim

Medi-Temp's eighth motion to dismiss seeks dismissal of Thera-Med's and CVS's fraud counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The fraud counterclaims involve Medi-Temp's "false representations that it owned unique and protectible intellectual property rights covered by the '254 Patent and/or blue trade dress on the exterior of thermal therapy packs." Medi-Temp argues that Thera-Med and CVS have failed to allege that they believed the alleged false statements were true or that they relied to their detriment on the alleged false statements; therefore, Medi-Temp concludes, as a matter of law, the fraud counterclaims must be dismissed. *See Schmidt v. Mel Clayton Ford*, 124 Ariz. 65, 67, 601 P.2d 1349, 1351 (App. 1979) (setting forth the nine elements of actionable fraud, including "the hearer's ignorance of [the representation's] falsity," "his reliance on its truth," and "his consequent and proximate injury.").

In response, Thera-Med and CVS, relying on *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F.Supp.2d 1180, 1201 (D.Ariz. 2001), argue that they sufficiently pleaded the fraud counterclaims by setting forth "the major misrepresentations upon which they fraud claims are based" and that they are "not required to explain the legal theory of the fraud claim." They also argue, relying on *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), that they "are not required to allege each element of a *prima facie* case at the pleading phase." The Court disagrees.

While all that is required are sufficient allegations to put Medi-Temp fairly on notice of the fraud claim against it, Rule 8 of the Federal Rules of Civil Procedure still requires that Thera-Med's and CVS's allegations show that they are entitled to the relief sought. As Medi-Temp correctly argues, Thera-Med and CVS have failed to set forth any allegations sufficient to support a finding that they believed that the alleged false statements were true or that they

- 13 -

relied to their detriment on the alleged false statements.[3]  In fact, Thera-Med's and CVS's pleadings evidence that they did not believe the alleged false statements and that they did not rely thereon or suffer any damage as a result thereof.[4]  Thus, even construing the facts alleged in the light most favorable to Thera-Med and CVS and accepting all well-pleaded factual allegations as true, Thera-Med and CVS have failed to show that they are entitled to relief under the fraud counterclaims.  *See SmileCare Dental Group*, 88 F.3d at 783.  Accordingly, Medi-Temp's Motion to Dismiss Fraud Counterclaim: Count XI (Thera-Med), Count X (CVS) (Doc. # 38) will be granted.

## X. Motion to Dismiss Negligent Misrepresentation Counterclaims

Medi-Temp's ninth motion to dismiss seeks dismissal of Thera-Med's and CVS's negligent misrepresentation counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A negligent misrepresentation claim, like a fraud claim, involves justifiable reliance on the misrepresentation and damage caused thereby.  *See Keuhn v. Stanley*, 208 Ariz. 124, 128, 91 P.3d 346, 350 (App. 2004).  Medi-Temp argues that Thera-Med and CVS have failed to allege that they justifiably relied on the alleged negligent misrepresentations; therefore, Medi-Temp concludes, as a matter of law, the negligent misrepresentation counterclaims must be dismissed.

The negligent misrepresentation counterclaims involve Medi-Temp providing

---

[3] While Thera-Med and CVS argue in the response that CVS relied on the alleged false statements when it sent a letter to Thera-Med requesting a response to the statements, even were the Court to consider such evidence outside of the pleadings, there is no allegation that CVS was damaged in any way by its claimed reliance.

[4] The Court notes that the fraud counterclaims appear to address alleged false statements made to and relied upon by third parties, not Thera-Med or CVS. For example, Thera-Med and CVS allege that "[a]s a result of Plaintiff's false representations and the detrimental reliance on those representations by consumers, manufacturers, and vendors, Thera-Med [and CVS] suffered damage to [their] business."  Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citations omitted).

"consumers, manufacturers, and vendors with false or incorrect information regarding its ownership of unique and protectible intellectual property rights covered by the '254 Patent and/or blue trade dress on the exterior of thermal therapy packs." Thera-Med and CVS also allege that the "consumers, manufacturers, and vendors" justifiably relied on the representations, thereby causing damage to Thera-Med and CVS.[5] As with the fraud counterclaims, Thera-Med's and CVS's pleadings evidence that they did not believe the alleged negligent misrepresentations and that they did not rely thereon or suffer any damage as a result thereof. Further, if Thera-Med and CVS did not believe the alleged negligent misrepresentations to be true statements, then any reliance thereon could not be justifiable. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 121, at 750 (5th Ed. 1984) ("[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."). Thus, even construing the facts alleged in the light most favorable to Thera-Med and CVS and accepting all well-pleaded factual allegations as true, Thera-Med and CVS have failed to show that they are entitled to relief under the negligent misrepresentation counterclaims. *See SmileCare Dental Group*, 88 F.3d at 783. Accordingly, Medi-Temp's Motion to Dismiss Negligent Misrepresentation Counterclaims: Count XII (Thera-Med), Count XI (CVS) (Doc. #39) will be granted.

**XI.  Motion for More Definite Statement of Injurious Falsehood and Defamation Counterclaims**

Medi-Temp's tenth motion seeks a more definite statement of Thera-Med's injurious falsehood and defamation counterclaims pursuant to Rule 12(e) of the Federal Rules of Civil

---

[5]As with the fraud counterclaims, the Court notes that the negligent misrepresentation counterclaims appear to address alleged negligent misrepresentations made to and relied upon by third parties, not Thera-Med or CVS. For example, Thera-Med and CVS allege that "[a]s a result of Plaintiff's negligent misrepresentations and the detrimental reliance upon the false or incorrect information provided to consumers, manufacturers, and vendors of hot/cold therapy products, Thera-Med [and CVS] suffered damage to [their] business."

Procedure. As discussed in Section V, a motion under Rule 12(e) is designed to attack unintelligibility rather than a lack of detail. *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 649 (D.Ariz. 1994) (citing *Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 580 (D.Nev. 1984)). Such motions are not favored because "the pleadings in the federal courts are only required to fairly notify the opposing party of the nature of the claim." *Id*. (quoting *A.G. Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D.Ariz. 1989)).

In seeking a more definite statement of the injurious falsehood and defamation counterclaims, Medi-Temp argues that Thera-Med failed to articulate the specific statements on which it bases its counterclaims. Medi-Temp further argues that claims posing a danger of interfering with a party's First Amendment rights must be pleaded with specificity. While the counterclaims may lack the detail Medi-Temp desires, the Court finds that the counterclaims, in conjunction with Thera-Med's response to the motion,[6] supply sufficient specificity of the injurious falsehood and defamation counterclaims to satisfy the pleading requirements under the Federal Rules of Civil Procedure. In this regard, the Court will construe Thera-Med's response to be a more definite statement of the nature of the counterclaims and the grounds upon which they rest. Accordingly, Medi-Temp's Motion for More Definite Statement of Injurious Falsehood and Defamation Counterclaims: Counts XIII-XIV (Thera-Med) (Doc. # 40) will be denied.

### XII. Motion to Dismiss Breach of Fiduciary Duty Counterclaim

Medi-Temp's eleventh motion seeks dismissal of Thera-Med's breach of fiduciary duty counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Medi-Temp argues that Arizona law provides a two-year statute of limitations for the breach of fiduciary duty counterclaim and, as such, the counterclaim is time-barred. In response, Thera-Med argues that California law (providing a four-year statute of limitations) applies and that the

---

[6]Thera-Med specifically identifies three communications it contends evidence Medi-Temp's false and defamatory statements of patent infringement.

accrual date of the counterclaim is a question of fact mandating denial of the motion to dismiss.

Regardless of the applicable law, a cause of action accrues when the party knows or should have known through the exercise of reasonable diligence the facts underlying the cause. *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of America*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 813, 29 P.3d 175, 184 (Cal. 2001). As pointed out by Thera-Med, if the accrual date depends on "who knew what, when it became known, and what triggered such knowledge," then the motion to dismiss should be denied because "rendering a decision as to the accrual date . . . would require a factual determination." *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Andersen L.L.P.*, 175 F.Supp.2d 1180, 1198 (D.Ariz. 2001). While Medi-Temp argues that the pleadings clearly indicate the breach of fiduciary counterclaim is time-barred, the Court finds that such a determination will require a factual determination. Accordingly, Medi-Temp's Motion to Dismiss Breach of Fiduciary Duty Counterclaim: Count XV (Thera-Med) (Doc. # 41) will be denied.

**XIII.     Motion to Dismiss Rite-Aid's Counterclaims and Motion for More Definite Statement**

Medi-Temp filed a motion to dismiss Rite-Aid's counterclaims for declaration of exceptional case, tortious business interference, fraud, negligent misrepresentation, and abuse of process pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Rite-Aid's counterclaims are substantively identical to Thera-Med's and CVS's counterclaims, the Court, for the reasons stated above, will grant Medi-Temp's motion to dismiss insofar as it seeks dismissal of Rite-Aid's tortious business interference counterclaim, fraud counterclaim, negligent misrepresentation counterclaim, and abuse of process counterclaim. Similarly, the Court, for the reasons stated above, will deny Rite-Aid's motion to dismiss insofar as it seeks dismissal of the declaration of exceptional case counterclaim.

Medi-Temp's motion also seeks a more definite statement of Rite-Aid's unfair

competition counterclaim. Because Rite-Aid's unfair competition counterclaim is substantively identical to Thera-Med's and CVS's counterclaim, the Court, for the reasons stated above, will deny Medi-Temp's motion for more definite statement of Rite-Aid's unfair competition counterclaim.

Accordingly,

**IT IS ORDERED** that Medi-Temp's Motion to Dismiss Tortious Business Interference Counterclaims: Count X (Thera-Med), Count IX (CVS) (Doc. # 31) is **GRANTED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Abuse of Process Counterclaim: Count XVIII (Thera-Med), Count XIV (CVS) (Doc. #32) is **GRANTED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss United States Anti-Trust Counterclaims: Count XVI (Thera-Med), Count XII (CVS) (Doc. # 33) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion for More Definite Statement of Unfair Competition Counterclaims: Count XVII (Thera-Med), Count XIII (CVS) (Doc. # 34) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss, or in the Alternative, to Strike Defendant's Counterclaim for Declaration of Exceptional Case: Count IV (Thera-Med and CVS) (Doc. # 35) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Counterclaims for Declaratory Judgment of Patent Invalidity and Unenforceability: Counts II & III (Thera-Med and CVS) & Motion to Strike Fifth Affirmative Defense of Patent Invalidity and Unenforceability (Doc. # 36) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Misappropriation Counterclaim: Count IX (Thera-Med) (Doc. # 37) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Fraud

Counterclaim: Count XI (Thera-Med), Count X (CVS) (Doc. # 38) is **GRANTED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Negligent Misrepresentation Counterclaims: Count XII (Thera-Med), Count XI (CVS) (Doc. #39) is **GRANTED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion for More Definite Statement of Injurious Falsehood and Defamation Counterclaims: Counts XIII-XIV (Thera-Med) (Doc. # 40) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Breach of Fiduciary Duty Counterclaim: Count XV (Thera-Med) (Doc. # 41) is **DENIED**;

**IT IS FURTHER ORDERED** that Medi-Temp's Motion to Dismiss Rite-Aid Counterclaims: Count IV (Declaration of Exceptional Case); Count IX (Tortious Business Interference); Count X (Fraud); Count XI (Negligent Misrepresentation) and Count XIV (Abuse of Process) and Motion for More Definite Statement of Rite Aid Counterclaim XIII (Unfair Competition) (Doc. #65) is **GRANTED** in part and **DENIED** in part, specifically **GRANTED** as to Count IX (Tortious Business Interference), Count X (Fraud), Count XI (Negligent Misrepresentation) and Count XIV (Abuse of Process) and **DENIED** as to Count IV (Declaration of Exceptional Case) and Counterclaim XIII (Unfair Competition);

**IT IS FURTHER ORDERED** that, to the extent Thera-Med, CVS and Rite-Aid requested leave to amend in the event any of Medi-Temp's motions were granted, such relief is **DENIED** without prejudice.

DATED this 20th day of July, 2006.

James A. Teilborg
United States District Judge